TEXAS FIRE INSURANCE COMPANY OF WACO, TEXAS, v. KNIGHTS
OF TABOR LODGE, OF CAMP COUNTY, TEXAS.

Decided April 29, 1903.

**1.—Insurance—Ownership of Property.**

It seems that a society owning a lodge room, the second story of a build-
ing belonging to and on land of another, under a contract giving them a perma-
nent title with right of ingress and egress, has an unconditional and sole owner-
ship thereof, and that the same is not situated on leased ground, within the
meaning of those terms in a policy of insurance.

**2.—Insurance—Premium Note—Forfeiture—Extension.**

Where a note given for the premium on an insurance policy and at the time
of its issuance provided: "In case this note is not paid at maturity the full
membership fee and premium shall be considered as earned during the currency
of said policy, and this note payable without reviving said policy or any of its
provisions," an extension of time on the note after its maturity and its subse-
quent collection and retaining the amount did not revive the policy forfeited by
failure to pay it at maturity.

**3.—Contract—Contemporaneous Instruments.**

A note given for an insurance premium and the policy issued at the same
time constituted one contract, and a forfeiture provided for by the note, in case
of its nonpayment at maturity, was as effective as though inserted in the policy,
and this though the two instruments bore different dates.

**4.—Insurance—Forfeiture—Waiver—Pleading.**

A plea that forfeiture of an insurance policy by nonpayment of the pre-
mium note was waived by collecting the note after forfeiture did not raise the
question of the effect of an express promise to pay the loss if insured would
pay the note.

**5.—Note—Default—Place of Payment.**

Forfeiture of an insurance policy by failure to pay at maturity a premium
note payable at P. was not avoided by proof that the note was not at that
place at the time of maturity without a showing that the payee was ready
and willing to pay it at that time and place.

Appeal from the District Court of Camp. Tried below before Hon.
J. M. Talbot.

*Claude V. Birkhead* and *T. Debenport,* for appellant.

*Sam. D. Snodgrass;* for appellee.

KEY, ASSOCIATE JUSTICE.—This is a suit on a fire insurance policy,
resulting in a judgment in favor of the plaintiff, and the defendant has
appealed. The trial judge filed the following findings of fact, which
are supported by the testimony and adopted by this court:

"1. That the plaintiff, through John H. Sayles, one of its officers,
made a written application to the defendant, the Texas Fire Insurance
Company of Waco, Texas, for a policy of insurance on a lodge room
24x36 feet, as well as the furniture and fixtures contained in said lodge
room and building; that said application was made on the 10th day of
April, A. D. 1901. I find that the following question was asked in

said application, 'Is building on leased ground?' and said question was answered, 'No.'

"2. I find that the defendant issued its policy of insurance to plaintiff on the 13th day of April, A. D. 1901, to run and be in force for a period of one year, and that during the life of said policy, to wit, on the 26th day of December, A. D. 1901, the property insured was totally destroyed by fire. I find that the plaintiff, immediately after the destruction of said property, notified the defendant in writing of such fact, and offered to do everything required of it by said policy, and that the defendant before the institution of this suit denied liability under said contract of insurance, refused to pay said loss or any part thereof, and waived proofs of loss, and declined in writing to pay plaintiff's claim or any part thereof.

"3. I find that said policy of insurance was and is in the sum of $600, and that $350 of said amount was on the building and that $250 was on the furniture and fixtures situated in said building.

"I find that the cash market value of the furniture and fixtures that were located in said building at the time of the issuance of said policy was $120.50, and that said furniture and fixtures were all in said building at the time the same was destroyed by fire, and that they were then worth in cash the sum of $120.50 and were totally destroyed by fire. I find that the policy provides that the defendant shall not be liable for any amount greater than three-fourths the cash value of said personal property.

"4. I find that the plaintiff in this case was the sole and unconditional owner of the property insured. That said plaintiff builded and had builded the second story of the house described, in said policy, and that it owned said second story of said building absolutely. That the lower or first story of said building was owned by one Tom Sayles, and was on the ground owned by the said Sayles. I find that said Tom Sayles executed to plaintiff a contract by the terms of which he gave it and its members a permanent right of ingress and egress over his land to said building.

"I find that one C. H. Price was the defendant's agent who solicited the insurance in this case and who prepared the application for said insurance; that the said C. H. Price was on the ground at the time said application was prepared. I find that he, as such agent, surveyed the premises, and that while said application was being prepared, plaintiff disclosed to the said Price the true status of its title, and told said Price that the land on which said building stood was the property of Tom Sayles, but that the second story of said building belonged to plaintiff; that only the second story of said building was intended by the parties to be insured. I find that there were no limitations or restrictions placed upon the authority of said Price in the application executed by plaintiff, and that said plaintiff had no knowledge of any restrictions or limitations on the authority of said Price outside of said application.

That the evidence in this case does not disclose that there were in fact any limitations placed on the authority of said agent by his principal.

"5. I find that the premium for the policy delivered to plaintiff was $15. That plaintiff paid $5 of said premium to the said C. H. Price in cash at the time the application was made, and that plaintiff executed its note to defendant for the sum of $10, due ninety days after date, said note being executed on the 10th day of April, A. D. 1901. I find that said note provides: 'In case this note is not paid at maturity the full membership fee and premium shall be considered as earned during the currency of said policy, and this note payable without reviving said policy or any of its provisions.'

"I find that said note was not paid at maturity, but that before the maturity thereof, the plaintiff requested defendant for an extension of the time at which said note should become payable, and that defendant in writing addressed to John H. Sayles as agent of plaintiff, did extend the time of the payment of said note indefinitely. I find that said note was payable at Pittsburg, Texas. That plaintiff never heard of said note any more after the same had been extended until a few days before the fire occurred, when he received a letter written by the said C. H. Price from Oma, Texas, about thirty miles from the residence of plaintiff, to the effect that he, Price, had said note for collection; that plaintiff immediately wrote said Price that he was ready to pay said note, and to please present same for payment at Pittsburg, Texas.

"That on December 28th, after the destruction of said property by fire, the said Price presented said note for payment at Pittsburg, Texas. That plaintiff promptly paid the same, and the said Price at the time he presented said note told plaintiff to pay the same, and that defendant would send its adjuster up in a few days to adjust and pay its loss. That said defendant has retained said money and has never offered or tendered same or any part thereof back to plaintiff.

"I find that defendant never at any time after the extension of said note demanded payment until after the fire when same was promptly paid. That said defendant never at any time indicated or intimated to plaintiff that it would claim a forfeiture of said policy for nonpayment of said note."

In addition to the foregoing, we add that the policy contained this stipulation:

"It is distinctly understood that time is the essence of this contract and if premium notes and accounts are not promptly paid when due this policy shall be null and void and of no effect." And the note contained these provisions: "Said policy and all rights thereunder shall, without notice to any party or parties interested herein be null and void on the failure to pay this note at maturity, with interest as herein provided. In case this note is not paid at maturity, the full membership fee and premium shall be considered as earned during the currency of said policy, and this note payable without reviving said policy or any of its provisions."

*Opinion.*—Overruling all other assignments of error, we sustain the one numbered 5 in appellant's brief, and 7 in the transcript. The note given for part of the premium was, in fact, a part of the contract between the parties, and the stipulation therein concerning forfeiture is to be given the same effect as if incorporated in the body of the policy.

Council for appellee contends in his brief that the two instruments were not contemporaneous, and should not be considered as one, because the note bears date April 10th, and the policy April 13, 1901; but the undisputed testimony shows that the two instruments relate to and were parts of the same transaction; and appellee averred in its supplemental petition that the note was executed on the 13th day of April, 1901, "in part consideration of the premium for said policy of insurance." The extension of time was not granted until after the maturity of the note. At that time, according to the clear and unambiguous terms of the contract, the policy was forfeited, and the contract having stipulated that upon failure to pay the note at maturity the entire premium should be considered as earned and the note payable without reviving the policy, the fact that the insurance company agreed to an extension of time and thereafter demanded and received payment of the note, did not operate as an estoppel and deprive it of the right to insist upon the forfeiture. Cohen v. Insurance Co., 67 Texas, 325; Insurance Co. v. Chowning, 8 Texas Civ. App., 455, and authorities there cited; also Laughlin v. Mutual Life Assn., 28 S. W. Rep., 411, and authorities cited.

Appellant pleaded the forfeiture resulting from the failure to pay the note at maturity, and appellee, in response to that plea, alleged that the defendant was estopped from asserting the forfeiture because of the fact that after extending the time of payment, and after the fire occurred, appellant collected the premium note and appropriated the proceeds thereof to its own use and benefit. The plea referred to is restricted to and rests solely upon the fact that appellant collected the note after the forfeiture occurred, and did not authorize the court below, and does not authorize this court, to determine whether or not the promise to pay the loss if appellee would pay the note at once, constituted a waiver of the forfeiture; and therefore we express no opinion on that point. Appellant pleaded the forfeiture, and in order for appellee to avoid the effect of the forfeiture, it was necessary for it to plead such facts as would constitute an estoppel or waiver, and it is limited in that regard to the facts pleaded. Banking Co. v. Stone, 49 Texas, 5.

The uncontroverted testimony shows that the policy had been forfeited, and was not in force at the time the loss occurred, and the authorities referred to show that the facts pleaded and relied on by appellee as estopping appellant from asserting the forfeiture can not be given that effect.

The fact that the note was made payable at Pittsburg, Texas, unaccompanied by testimony showing that appellee was ready and willing

to pay the note at that place at the time of maturity, did not prevent the forfeiture, although it was shown that the note was not at that time in Pittsburg. Hermes v. Vaughn, 3 Texas Civ. App., 607.

There being no controversy about the facts, and appellant having clearly established one of its defenses, this court, as required by statute, will render the judgment which the court below should have rendered. Accordingly, the judgment of the District Court is reversed and judgment here rendered for appellant.

*Reversed and rendered.*